DEVELOPMENT MANAGEMENT GROUP, INC., Plaintiff-Appellee, *v.* INTERSTATE REALTY, INC., *et al.*, Defendants-Appellants.

First District (5th Division)   No. 77-1040

Opinion filed June 2, 1978.

Peterson, Ross, Schloerb & Seidel, of Chicago (Russell M. Pelton, Jr., and Ellen J. Kerschner, of counsel), for appellants.

Patrick J. Phillips, of Chicago, for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

Plaintiff, Development Management Group, Inc. (hereinafter "DMG"), brought this action against defendants, Interstate Realty, Inc. (hereinafter "Interstate"), and L. J. Sheridan & Company (hereinafter "Sheridan"), for damages arising from an alleged breach of contract. At the conclusion of defendants' case in the bench trial below, plaintiff moved for a directed finding and the motion was granted. Judgment for plaintiff was entered upon the motion. Defendants' post-trial motion was subsequently denied. This appeal was taken from the judgment and the order denying the post-trial motion. We reverse and remand. The pertinent facts follow.

On July 3, 1973, DMG and Interstate executed a contract for the sale of an apartment building owned by Interstate and managed by Heil, Heil, Smart & Golee, Inc. (hereinafter "Heil"). Listed on the contract as real estate brokers were defendant Sheridan and Urban Search Corporation (hereinafter "Urban Search"). Sheridan held the purchaser's (DMG's) $5,000 earnest money. One paragraph of the contract provides for forfeiture of the earnest money to the seller if DMG terminates the contract. This paragraph also provides that the earnest money shall be returned to DMG if the contract is terminated and DMG is not culpable. Another paragraph—paragraph 19—presents a condition precedent to plaintiff's obligation to purchase the building in question, viz., a satisfactory inspection of the building prior to closing. This paragraph also provides for return of the earnest money and termination of the contract if the condition is not fulfilled. The parties agreed at the time of execution that the building would be inspected on July 10, 1973.

Accompanied by the janitor, a Heil employee, six people inspected the building on July 10: Peter Mills, the president of Interstate; Richard M. MacDonald, a Heil employee; Thomas Galagher, a DMG employee; Ronald E. Traub, a real estate broker employed by Urban Search; Susan Chein, an Urban Search employee; and Clarence Ruckner, an "MAI" appraiser. It is uncontested that nine of the 11 apartments in the building were inspected that day. Gallagher, who was DMG's Director of Operations, testified on behalf of the plaintiff that the janitor tried to get into the two apartments not inspected but was unsuccessful. According to Gallagher, no one inspecting on behalf of DMG stated that they were satisfied with the condition of the building after inspecting the nine apartments. He added that he did not consider the inspection completed that day.

MacDonald, who managed the building in question for his employer, Heil, testified on behalf of the defendants that the nine apartments were thoroughly inspected over a period of about two hours. Upon finding two apartments locked, the janitor searched for keys to them. His search was fruitless. MacDonald heard Traub tell Mills in the presence of all who had inspected that it was unnecessary to see the remaining two units. MacDonald added that no one mentioned returning for a subsequent inspection of the two apartments they had not seen.

Mills, the president of Interstate, testified that he put the building in question up for sale through his broker, Sheridan. When the contract was executed on July 3, 1973, the inspection date was agreed upon and the purchaser's president, Louis R. Silverman, stated that he would send an engineer, a decorator and an appraiser to inspect the building on that date. On July 10, 1973, Traub told Mills that he was DMG's broker; Chein told Mills that she was DMG's decorator; Gallagher told Mills that he was DMG's structural engineer; and Ruckner told Mills that he represented DMG for purposes of an appraisal. When he discovered that the tenants in two of the 11 apartments were not at home, Mills advised the group that, if necessary, he would get a ladder and gain entrance to the two units, but he requested that they all wait until the tenants returned. After discussion, Gallagher, Traub, Chein and Ruckner stated that the inspection had been satisfactory and that there was no need to see the other two apartments because they were satisfied with the building. Mills specifically asked each of them whether the inspection satisfied the contractual requirement and completed the necessary inspection of the building. Each replied that inspection of the remaining apartments was not necessary.

A few days later Mills received a letter from Traub with an Urban Search letterhead requesting a July 16, 1973, inspection of one of the two apartments which had not been viewed and a re-inspection, on the same date, of three of the apartments which had been examined. Mills discussed this request with Interstate's attorney, Russell M. Pelton, Jr., and concluded that Traub was requesting a courtesy re-inspection since the inspectors had been satisfied with the building on the 10th. Because the right to inspect expired on the 15th, Mills arranged for a Saturday, July 14, re-inspection. DMG thereupon advised him that its personnel could not attend that day. Mills then scheduled a July 16 re-inspection. On the 16th, Traub, Chein and Gallagher viewed only the two units they had not inspected on the 10th. At this time Mills asked Traub to confirm that this courtesy re-inspection would not extend the time within which DMG could withdraw from the contract. Traub told Mills not to worry and said:

"* * * this is not going to extend the contract* * *.

* * *

Tomorrow is the last day."

On July 25, 1973, Mills received notice from Silverman, the president of DMG, that the purchaser was not satisfied with the building. The notice contained a request for the return of DMG's earnest money. The parties subsequently exchanged several letters but DMG never appeared at the closing on the building. The earnest money was not returned to DMG and it brought suit for the $5,000, plus interest.

At the close of defendants' case, counsel for DMG moved for a directed finding in plaintiff's favor and the court granted the motion. This appeal followed.

OPINION

I

The threshold issue in the case before us is whether the trial judge followed the proper procedure in reaching his decision to grant plaintiff's motion for a directed finding at the close of defendants' case. After the motion was made, the judge entertained argument by both counsel and then found for plaintiff. Plaintiff's counsel thereupon raised the subject of interest on the $5,000. Defendants' counsel protested and asked for permission to make additional argument on plaintiff's motion for a directed finding. Thereafter the following colloquy took place.

"THE COURT: Well, this is not a jury trial. Counsel, don't ask for a finding at the conclusion of all of the evidence calling upon the Court to rule upon the matters as a matter of law. I haven't arrived at the point of weighing the evidence in the case as you mentioned. I'd much prefer that, but Counsel asked me to rule on his motion; and I have ruled on his motion. Clearly, if I were to reopen it and hear your argument as to all of the evidence, ask the Court to weigh the evidence in the case, I think that it wouldn't serve any useful purpose, Counsel.

MR. MORGANS [Defendants' Counsel]:
Your Honor, I think that the motion—Maybe I misunderstood; my evidence didn't prove my defense?

THE COURT: As a matter of law.

MR. MORGANS: As a matter of law? And that was your ruling?

THE COURT: That's correct.

\* \* \*

THE COURT: The Court will enter its finding for the plaintiff and against the defendant, and will enter judgment thereon.

The Court listening to the evidence in this case and looking at the contract well appreciates and understands the reason for Provision 19—Paragraph 19 in this type of real estate transaction and well understands and appreciates the problem that often attends negotiations in setting out an appropriate language for inspection.

I think all of the attorneys here would agree that the agreement entered into [to] purchase real estate on July 3 was fairly definite and fairly certain; so definite and so certain that most of the provisions could be enforced in a court of law.

With respect to your Paragraph 19, we have admittedly an agreement on July 3 to the time of the particular inspection. So it is in fact an agreement to agree in the future with respect to certain other details. And in this particular case, that provision in this contract, that is the controversy in this case; we have the condition precedent to the obligations for the plaintiff to perform, that is to purchase the property is conditioned upon his satisfaction with an inspection of the premises. Whether he is reasonably satisfied or unreasonably satisfied is of no real importance. If he says that he's not satisfied with it, that's all that it takes to bring in operation the provisions of that condition precedent, and I believe in his obligation to perform. The Court feels here in this case the language of Section 19 is quite explicit. In the first sentence it states: 'Purchaser's obligations under this agreement are subject to a satisfactory inspection of all apartments in the subject property.' The second sentence is where we get into the foggy area. 'The parties agree to arrange such an inspection at a mutually agreeable time no later than July 15, 1973.' That's where they agreed to agree on something at a future date and—

MR. MORGANS: If I may interject—

THE COURT: —I feel on the basis of the evidence that was produced on this record and the basis of the law as it applies to contracts that the Court must sustain the motion of Mr. Phillips [plaintiff's counsel] and does sustain that motion.

Those are the underlying reasons, Counsel, if you want to know the reason why I did rule; and the Court will enter judgment on its finding, and the execution will be stayed 14 days."

Defendants argue that it is not clear what the judge meant when he explained that he was ruling as a matter of law that defendants' evidence did not prove their defense. We agree. Defendants advance four equally plausible interpretations and we can only speculate as to which captures the judge's meaning. Whatever the real underlying reason for the judge's ruling, it seems clear that he did not pass on the credibility of the witnesses and consider the weight and quality of the evidence prior to reaching his decision to grant plaintiff's motion. After granting the motion the judge stated: "I haven't arrived at the point of weighing the evidence* * *." At oral argument defendants maintained that the judge did not weigh the evidence in reaching his decision on the motion and DMG conceded that he did not do so.

■■ DMG suggests that the judge considered all the evidence in the light most favorable to defendants instead of weighing the evidence. In *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504, the court held that "verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (*Pedrick,* 37 Ill. 2d 494, 510, 229 N.E.2d 504.) Unfortunately it is not clear what standard the judge applied in passing on plaintiff's motion. The report of proceedings can be construed so as to support the conclusion that he used the *Pedrick* standard, but it can also be given other, equally plausible interpretations. DMG argues that defendants were not prejudiced by application of the *Pedrick* standard instead of weighing all of the evidence because the former is a higher standard and only the latter, lower standard, is required by law. This argument assumes that the *Pedrick* rule was applied. As we have indicated, it is not clear from the report of proceedings that the *Pedrick* standard was applied. Furthermore, if it was employed, it was not correctly employed. Viewing all of the evidence in its aspect most favorable to defendants, the plaintiff is not so overwhelmingly favored that no contrary finding based on the evidence could ever stand. A right created by a written provision in a contract may be orally waived. (See, *e.g., Jacobs v. Carroll* (1977), 46 Ill. App. 3d 74, 83, 360 N.E.2d 136.) The evidence, in its aspect most favorable to defendants, establishes that plaintiff's agents orally waived plaintiff's right to inspect the two units not viewed on the 10th. Consequently, if the *Pedrick* standard was applied, plaintiff's motion should have been denied.

■■ While it is not clear what procedure the judge followed in reaching his decision to grant plaintiff's motion, it is clear that he did not weigh the evidence. In *City of Evanston v. Ridgeview House, Inc.* (1976), 64 Ill. 2d 40, 349 N.E.2d 399, the court stated:

> "The *Pedrick* rule was designed to prevent a trial judge from assuming the duties of the trier of fact in a jury case. In a trial without a jury, however, the trial judge is the trier of fact, and the *Pedrick* rule is not applicable. In a case tried without a jury, the trial court is to weigh the evidence when a defendant moves for judgment at the close of the plaintiff's case. (Ill. Rev. Stat. 1973, ch. 110, par. 64(3).) In ruling on the defendant's motion for judgment, therefore, the judge had the duty to pass on the credibility of the witnesses and consider the weight and quality of the evidence. In weighing the evidence, the court had the responsibility to consider all the evidence, including any favorable to the defendant. The court was not to consider the evidence in the light most favorable

to the plaintiff. Consequently, we will not reverse the decision of the trial court unless that decision is contrary to the manifest weight of the evidence." (*City of Evanston,* 64 Ill. 2d 40, 57-58, 349 N.E.2d 399.)

In *City of Evanston,* the court was confronted with a bench trial in which the defendant moved for a directed finding at the close of plaintiff's case and it pointed out that the Civil Practice Act requires the judge to weigh the evidence in ruling on such a motion. (Ill. Rev. Stat. 1977, ch. 110, par. 64(3).) From this statutory requirement the court inferred a duty to pass on the credibility of the witnesses and to consider the weight and quality of the evidence. There is no comparable statutory requirement to weigh the evidence when ruling on a motion for a directed finding at the close of a defendant's case. Nevertheless, the rationale supporting the *Pedrick* rule is inapplicable in a bench trial. There is simply no reason to be concerned about preventing a trial judge from assuming the duties of the trier of fact in a bench trial context. As the court stated in *City of Evanston,* in a bench trial: "the trial judge is the trier of fact, and the *Pedrick* rule is not applicable." We believe that the proper procedure to follow when ruling on a motion for a directed finding at the close of a defendant's case in a bench trial is to weigh the evidence. We hold that the trial judge had a duty to pass on the credibility of the witnesses and consider the weight and quality of the evidence in ruling on plaintiff's motion for a directed finding. In weighing the evidence, all of it should be considered, including any favorable to the plaintiff-movant; and it should not be considered in the light most favorable to the defendant-opponent. As we have indicated, the court below did not follow this procedure.

## II

■■ The second issue in the case at bar involves the consequences of using the wrong procedure in reaching a decision on plaintiff's motion. Normally we would not reverse the decision of the trial court unless that decision was contrary to the manifest weight of the evidence. (See *City of Evanston v. Ridgeview House, Inc.* (1976), 64 Ill. 2d 40, at 58, 349 N.E.2d 399.) The phrase "manifest weight" has been defined as "that weight which is clearly evident, clear, plain and indisputable" (*Singles v. Horwitz* (1975), 34 Ill. App. 3d 973, at 975, 342 N.E.2d 220), and as "the clearly evident, plain and indisputable weight of the evidence." (*Gettemy v. Grgula* (1975), 25 Ill. App. 3d 625, at 628, 323 N.E.2d 628). In the instant case, however, the manifest weight of the evidence is not discernible.

Gallagher testified on behalf of the plaintiff, DMG, that no one expressed satisfaction with the building after inspecting the nine apartments on July 10. MacDonald, on the other hand, testified on behalf of the defendants that Traub said it was not necessary to see the

remaining two units. Also Mills testified on behalf of the defendants that Gallagher, Traub, Chein and Ruckner each stated that the inspection had been satisfactory and it was not necessary to inspect the other apartments because they were satisfied with the building. Obviously there is a conflict in the evidence over whether there was an oral waiver of plaintiff's right to inspect two apartments. Under our holding, the trial judge had the duty to pass on the credibility of these witnesses and to weigh their conflicting testimony before ruling on the motion. He did not do so. Where, as here, testimony is conflicting, a determination of credibility is a necessary condition to our being able to find that the trial court's decision is supported by the manifest weight of the evidence. We cannot determine the credibility of these witnesses from the cold record before us. Without a determination of credibility: (1) a decision in plaintiff's favor cannot be said to be contrary to the manifest weight of the evidence; but (2), a decision in defendants' favor also cannot be said to be contrary to the manifest weight of the evidence. Without a determination of credibility, neither the testimony of plaintiff's witness nor the testimony of defendants' witnesses weighs so heavily as to be found indisputable. Consequently, we cannot determine what the manifest weight of the evidence is.

If the proper procedure had been employed below, credibility would have been determined. Because the wrong procedure was used and credibility was not determined, we cannot refrain from reversing this cause and remanding for a new trial.

### III

DMG suggests that we should instead remand with directions to proceed as though the motion had been denied. The plaintiff points out that Supreme Court Rule 366(b)(3)(iii) (Ill. Rev. Stat. 1977, ch. 110A, par. 366(b)(3)(iii)) provides:

> "If a judgment entered in favor of the defendant pursuant to a motion for a finding or judgment at the close of plaintiff's case is reversed on appeal, the case shall be remanded with directions to proceed as though the motion had been denied by the trial court or waived."

DMG argues that defendants are not entitled to a new trial because of this rule and that we should follow its directive in the case at bar. This rule is not applicable to the situation before us and we are not prepared to extend it to this situation.

### IV

In view of our finding, it is unnecessary to consider other contentions

raised by the parties. Accordingly, we reverse the judgment and order of the Circuit Court of Cook County and remand this cause for a new trial.

Reversed and remanded.

LORENZ and MEJDA, JJ., concur.