BETTY PREVENDAR *et al.*, Plaintiffs-Appellants, v. RAYMOND THONN *et al.*, Defendants-Appellees.

Second District   No. 2—87—0483

Opinion filed February 5, 1988.—Rehearing denied March 4, 1988.

James W. Holman, of Cellucci & Yacobellis, of Naperville (Marsha H. Cellucci, of counsel), for appellants.

Wylie, Wheaton & Associates, P.C., of Wheaton (Bonnie M. Wheaton, of counsel), for appellee Century 21 Atlas Real Estate, Inc.

JUSTICE INGLIS delivered the opinion of the court:

Plaintiffs, Betty Prevendar and Anne Heckbert, former owners of real estate located at 1505 South Addison, Lombard, Illinois, brought this action against Raymond and Linda Thonn, John S. Fitzgerald, Century 21 Atlas Real Estate, Inc. (Century 21), and two corporate officers of Century 21 to recover for property damage occurring on plaintiffs' property. A default judgment was entered against the Thonns, and they are not parties to this appeal. Further, plaintiffs' complaint sought no relief as to the individual officers of Century 21. This appeal arises from orders of the trial court directing a verdict in favor of Fitzgerald and Century 21 at the close of plaintiffs' case and denying plaintiffs' motion for reconsideration. Plaintiffs further appeal the trial court's order assessing attorney fees in favor of Century 21 against both plaintiffs and plaintiffs' counsel pursuant to section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat., 1986 Supp., ch. 110, par. 2—611). Fitzgerald has subsequently been dismissed from this action and is not part of this appeal. We affirm in part and reverse in part.

Plaintiffs inherited the Lombard Street property in 1980. The property consisted of a main house, coach house, and garage. The structures were vacant and had been winterized in November 1981 by Fitzgerald, a plumbing contractor. At that time, Century 21 was acting as listing agent for plaintiffs' property. In April 1982, Century 21 approached Prevendar about the possibility of renting the property to the Thonns with an option to purchase. Prevendar agreed and subsequently executed a one-year lease in accordance with those terms.

Thereafter, plaintiffs had difficulty obtaining the rent payments from the Thonns. In November 1982, Prevendar and a companion went to inspect the property and discovered some plumbing damage in the coach house. A burst pipe which had been removed from the wall was on the floor of the coach house, and the wall between the kitchen and the bathroom had a hole in it. Prevendar subsequently contacted Century 21 by telephone and solicited management services for the property. Prevendar explained to the Century 21 representative that such services were necessary because she was having trouble collecting rent and there was plumbing damage which needed repair. Century 21 informed Prevendar that a written management agreement would be prepared and sent to her for signature.

Thereafter, Century 21 prepared a written management agreement for the property and forwarded that agreement to Prevendar. Prevendar received the written agreement, executed it, and returned it to Century 21. The written agreement took effect on December 1,

1982. Century 21's responsibilities under the written agreement included renting the property, collecting the rents, and terminating tenancies. In addition, the written agreement provided that Century 21 effectuate and supervise any repairs and decorating of the property. However, the agreement further provided that expenses exceeding $49.99 had to be authorized in writing by plaintiffs.

Following the execution of the written management agreement, Century 21 contacted the Thonns on four or five occasions in an attempt to collect the delinquent rent. Century 21's attempts to collect the rent were unsuccessful. Century 21 did not take any steps to initiate eviction proceedings against the Thonns, but rather recommended to Prevendar that she contact her attorney for that purpose. Century 21 also informed Prevendar of several complaints the Thonns had regarding the condition of the premises. When asked about the status of the plumbing problem and rent collection attempts, Century 21 advised Prevendar that they were taking care of it. In fact, Century 21 obtained a bid for repairs sometime in February or March 1983. The returned bid was for $1,850; however, the record does not reflect the exact date on which the bid was taken or the condition of the property at that time. Century 21 did not communicate the bid to Prevendar, but believed that the plumber had done so in February or March 1983. In any event, Prevendar stated that the bid was not communicated to her until April 1983. At no time during the duration of the written agreement did Century 21 request, or plaintiffs' provide, written authorization to effectuate any repairs on the property. No action was taken on the bid.

Following the termination of the Thonns' lease in April 1983, Prevendar and a companion went to the property and discovered that the Thonns had vacated the premises. Neither Prevendar nor Century 21 was aware that the Thonns had vacated the property. Upon inspection, Prevendar discovered that the condition of the coach house had substantially deteriorated from the time when she first noticed the broken pipe and hole in the wall. The walls and ceilings were covered with mildew. There was substantial water and mildew damage throughout the coach house, and the metal cabinets in the kitchen were rusted. The parties subsequently terminated their relationship, and plaintiffs sold the property in August 1983.

On September 5, 1985, plaintiffs filed their complaint in this action. Plaintiffs alleged that Century 21 breached the terms of the management agreement with plaintiffs and willfully and wantonly disregarded its duties under the contract. The trial court, in a bench trial, bifurcated the proceedings as to liability and damages. A hear-

ing on liability was held on March 11 and 12, 1987. Among the witnesses called by plaintiffs was plaintiffs' designated expert, John Ball. After extensive *voir dire,* the court determined that plaintiffs had not adequately qualified Ball as an expert. At the conclusion of plaintiffs' case, Century 21 moved to strike evidence as to the condition of the property after termination of the lease and management agreement. Century 21 also moved for a directed verdict. Both motions were granted. Plaintiffs' motion for reconsideration was denied. At the same time, the court considered Century 21's petition for attorney fees and costs pursuant to section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat., 1986 Supp., ch. 110, par. 2—611). The trial court granted Century 21's petition for fees against plaintiffs *and* plaintiffs' *counsel.* Plaintiffs brought this timely appeal arguing that the trial court erred in (1) entering a directed verdict in favor of Century 21; (2) striking the evidence as to the condition of the property after termination of the management agreement; (3) disqualifying plaintiffs' expert; and (4) applying section 2—611.

This case comes before this court after the trial court in a bench trial directed a verdict in favor of Century 21 at the conclusion of plaintiffs' case. Section 2—1110 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1110) sets forth the applicable standard in a bench trial when a defendant moves for directed verdict at the conclusion of a plaintiff's case. Section 2—1110 provides that "[i]n ruling on the motion, the court shall weigh the evidence, considering the credibility of the witnesses and the weight and quality of the evidence." (Ill. Rev. Stat. 1985, ch. 110, par. 2—1110.) Our supreme court has held that, pursuant to such a motion, the trial court is to determine in the first instance whether the plaintiff has made out a *prima facie* case as a matter of law. (*Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 155.) If the plaintiff has not made out a *prima facie* case, the defendant's motion should be granted, and judgment should be entered in his favor. (81 Ill. 2d at 155.) However, if the court determines that the plaintiff *has* made out a *prima facie* case, the trial judge, as the finder of fact, must then weigh the plaintiff's evidence. (81 Ill. 2d at 155.) This weighing process may result in the negation of some of the evidence necessary to the plaintiff's *prima facie* case. If this occurs, the defendant's motion should be granted and judgment should be entered in his favor. (81 Ill. 2d at 155.) In weighing the evidence, the court must consider all of the evidence, including any favorable to the defendant. (81 Ill. 2d at 154.) The court *is not* to view the evidence in the light most favorable to the plaintiff. (81 Ill. 2d at 154.) On appeal, the decision of the trial court should not be reversed un-

less it is contrary to the manifest weight of the evidence. (81 Ill. 2d at 154.) Manifest weight has been described as the weight of the evidence which is clear, plain, and indisputable. See *Development Management Group, Inc. v. Interstate Realty, Inc.* (1978), 61 Ill. App. 3d 155, 161.

Plaintiffs agree that the applicable standard before the trial court was to weigh the credibility of the witnesses and the quality of evidence. However, plaintiffs point out that the trial judge did not state his findings and argue that he did not perform the weighing function properly. Furthermore, plaintiffs expressly challenge the well-accepted maxim that a trial court is in a better position to observe the witnesses and assess their credibility than is a reviewing court. Plaintiffs' contentions must fail.

Plaintiffs correctly note that the trial court did not state the basis upon which it rendered its decision in either the order granting the motion for directed verdict or the hearing on that motion. Although the record indicates that Century 21 attacked plaintiffs' failure to prove their *prima facie* case, we need not speculate on the basis of the trial court's ruling since under either basis the decision is not against the manifest weight of the evidence.

Plaintiffs' complaint alleges a cause of action for breach of contract and for willful and wanton conduct in the performance of Century 21's duties under that contract. To state a cause of action for breach of contract, a plaintiff must show (1) the existence of a valid and enforceable contract; (2) the performance of the contract by plaintiff; (3) the breach of the contract by defendant; and (4) a resulting injury to plaintiff. (*Allstate Insurance Co. v. Winnebago County Fair Association, Inc.* (1985), 131 Ill. App. 3d 225, 233.) A defendant's failure to comply with the duty imposed by the contract gives rise to the breach. (131 Ill. App. 3d at 233.) In addition, in order to state a cause of action for willful and wanton conduct giving rise to a breach of duty, plaintiff must show that the breach was intentional. *Booker v. Chicago Board of Education* (1979), 75 Ill. App. 3d 381, 385.

The proffered evidence in the instant case indicates that plaintiffs failed to establish a *prima facie* case for either breach of contract or willful and wanton misconduct. The parties agree that the contract underlying this cause of action is the written management agreement. The written agreement clearly provided that repairs in excess of $49.99 must be authorized in writing by the owners, in this case, Prevendar and her sister. The trial testimony established that a bid was obtained for repairing the property. That bid was in the amount of $1,850, well in excess of $49.99. That bid was further communicated

by the bidder to Prevendar. Nonetheless, Prevendar never provided Century 21 with written authorization to proceed with the repairs in accordance with the terms of the written management agreement. Although Prevendar testified that she orally authorized the repairs prior to entering into the written management agreement, Prevendar's execution of that written agreement placed her on notice that a written authorization would be necessary. Absent a written authorization, Century 21 did not have a duty to go forward with the repairs, and its failure to go forward with the repairs under those circumstances cannot be said to be the cause of any subsequent damage. Absent proof of an essential element of breach of contract, Century 21 was entitled to a directed verdict as a matter of law. (See *American National Bank & Trust Co. v. City of North Chicago* (1987), 155 Ill. App. 3d 970, 975.) Similarly, since Century 21 did not breach a duty giving rise to plaintiffs' damages, there was not an *intentional* breach and, therefore, no cause of action for willful and wanton misconduct. See *Booker*, 75 Ill. App. 3d at 385.

■ Even assuming plaintiffs initially stated a *prima facie* case and the court engaged in the weighing function described in section 2—1110 (Ill. Rev. Stat. 1985, ch. 110, par. 2—1110) and *Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, the record amply supports the trial court's decision. The trial transcript indicates that Prevendar denied receiving communication of the bid to repair the coach house damage. Prevendar was then impeached with portions of her own deposition in which she admitted receiving that bid. Under these circumstances, the trial court could have properly determined that Prevendar was not a credible witness and discounted her testimony. A trial court, in determining the weight to be afforded to conflicting testimony, is in a far better position than an appellate court to determine the credibility of the witnesses. (*In re Marriage of Eltrevoog* (1982), 92 Ill. 2d 66, 71; *Amoco Realty Co. v. Montalbano* (1985), 133 Ill. App. 3d 327, 333.) Despite plaintiffs' invitation, we will not ignore this well-settled rule. Since the trial court's decision is not against the manifest weight of the evidence, we will not disturb it on review.

■ Plaintiffs next contend that the trial court erred in striking testimony regarding the condition of the property after the termination of the written management agreement. We disagree.

Plaintiffs cite *Bluestein v. Upjohn Co.* (1981), 102 Ill. App. 3d 672, 680, for the proposition that any evidence which tends to prove a fact in controversy or render a matter at issue more or less probable is considered relevant. While that might be a correct statement of the law, it has no bearing on the correctness of the trial court's action in

the instant case. The determination of whether evidence is relevant is largely within the discretion of the trial court. (102 Ill. App. 3d at 680.) In the instant action, the trial court evidently determined that the evidence sought to be introduced was not relevant to the issue of Century 21's liability. Our review of the record indicates that such a determination was warranted. Century 21 did not have a duty to initiate repairs in excess of $49.99 without plaintiffs' written authorization. Plaintiffs did not provide that authorization. Thus, the condition of the property after termination of the management agreement had no bearing with regard to Century 21's alleged breach of contract. The trial court did not abuse its discretion in striking that evidence.

■ Plaintiffs next contend that the trial court erred in disqualifying John Ball, plaintiffs' designated expert witness. We need not address the merits of this argument.

Plaintiffs offered Ball to testify as to the cause of the condition of the property after the termination of the written management agreement. Even if Ball were allowed to testify as an expert, that would not change the outcome of this case. Had plaintiffs established that Century 21's failure to repair the damage to the coach house caused the additional damages for which they seek recovery, Century 21 would still be entitled to a directed verdict since plaintiffs had not properly authorized Century 21 to make the repairs as was required by the written management agreement.

Accordingly, we find that the trial court correctly entered a directed verdict in favor of Century 21 on the issue of liability. Plaintiffs' allegations of error relating to the striking of certain evidence and the disqualification of plaintiffs' expert witness have no bearing on that decision.

■ Plaintiffs next contend that the trial court erred in applying section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat., 1986 Supp., ch. 110, par. 2—611) and awarding attorney fees and costs in this case. Plaintiffs challenge the court's decision as to this issue on three grounds. Namely, plaintiffs argue that the court erred in (1) applying the statute retroactively; (2) determining that plaintiffs' complaint was frivolous and not well-grounded in fact or law; and (3) awarding damages in the amount specified.

Section 2—611 requires that an attorney sign pleadings and other papers filed with the court. (Ill. Rev. Stat., 1986 Supp., ch. 110, par. 2—611.) The attorney's signature constitutes a certificate by him that he has read the document, has made a reasonable inquiry into its basis, and believes that it is well-grounded in fact and law and is being made in good faith. (Ill. Rev. Stat., 1986 Supp., ch. 110, par. 2—611.)

Pleadings and other papers filed in violation of section 2—611 shall subject the party, the party's attorney, or both to an appropriate sanction which may include an order to pay the other party's attorney fees and costs. Ill. Rev. Stat., 1986 Supp., ch. 110, par. 2—611.

Plaintiffs first challenge the application of section 2—611 in this case on the basis that its application constitutes a retroactive penalty.

The instant action was filed on September 5, 1985. At the time of filing, section 2—611 provided that "[a]llegations and denials, made without reasonable cause and found to be untrue, shall subject the *party* pleading them to the payment of reasonable expenses, actually incurred by the other party by reason of the untrue pleading, together with a reasonable attorney's fee." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 110, par. 2—611.) The form of section 2—611 in effect at the time of the filing of the pleadings in this case made no mention of assessing the fees against the party's counsel. (See Ill. Rev. Stat. 1985, ch. 110, par. 2—611.) Rather, that provision was added when the statute was amended by Public Act 84—1431, article 2, section 1. See Ill. Rev. Stat., 1986 Supp., ch. 110, par. 2—611.

In determining whether the amended section 2—611 should be applied retroactively to plaintiffs in this case, we look first to the provisions of the public act amending that section. Article 27 of Public Act 84—1431 states:

"This Act takes effect 60 days after becoming a law and Articles 1 and 3 through 6 apply only to causes of action accruing on or after such effective date, except that Article 10 takes effect 120 days after becoming law." (Pub. Act 84—1431, art. 27.)

Article 2 of Public Act 84—1431 amends section 2—611. Century 21 states that since article 27 excluded article 2 from the provisions which were to be given prospective application only, it was the legislature's intent that that article be given retroactive application. We disagree.

Our supreme court has stated that "[a]s a general rule, *** statutes will not be considered retroactively unless it clearly appears such was the legislative intention." (*Hogan v. Bleeker* (1963), 29 Ill. 2d 181, 184.) However, the court went on to note that the general rule is not applicable where the statute relates merely to remedies and forms of procedure and which do not affect substantive rights. (29 Ill. 2d at 184.) The court stated:

"Where a statute giving a special remedy is amended without a savings clause in favor of pending actions, all actions affected must be decided in conformity to the law then existing, both in

the trial and [a]ppellate [c]ourts, without regard to whether the actions accrued before or after such change, or whether action had been previously instituted." (29 Ill. 2d at 184-85.)

Thus, procedural statutes are clearly to be given retroactive application. If the amendment to section 2—611 is considered to be procedural only, then it must be concluded that the trial court, if correct in finding that plaintiffs' complaint was frivolous, was correct in applying that section retroactively. For the reasons set forth below, we do not believe that the section as amended is merely procedural.

In *People v. Frieder* (1980), 90 Ill. App. 3d 116, 120, the Appellate Court for the Third District held that an amendment to the predecessor statute of section 2—611 changing the movant's *burden of proof* must be given retroactive application. In addressing the issue before it, the *Frieder* court noted that they were concerned only with the *burden of proof* and stated that "[a] party's statutory burden of proof cannot be governed by a statute no longer in effect at the time the proceeding in which that party has the burden is initiated." (90 Ill. App. 3d at 120.) Similarly, in *Songer v. State Farm Fire & Casualty Co.* (1980), 91 Ill. App. 3d 248, 254, the court held that an amendment to section 155 of the Illinois Insurance Code (Ill. Rev. Stat. 1979, ch. 73, par. 767) removing the fixed limit to the amount of recoverable attorney fees for vexatious actions should be applied retroactively. While both cases are cited as supporting retroactive application of the amended section 2—611, we believe they are distinguishable from the instant action. Unlike the amendment considered here, the amendments in *Frieder* and *Songer* did not impose new obligations and liabilities, but rather merely changed existing remedies.

We believe that the amendment in the instant action is substantially different than those amendments considered in *Frieder* and *Songer*. Unlike its immediate predecessor, the amended section 2—611 requires the *attorney* representing a party *to sign* the pleading or paper as *certification by him* that he has read the pleading and that to the best of his knowledge, *after reasonable inquiry*, the pleading is well-grounded and not a tool of harassment. (Compare Ill. Rev. Stat. 1985, ch. 110, par. 2—611 with Ill. Rev. Stat., 1986 Supp., ch. 110, par. 2—611.) Although attorneys are subject to an ethical duty not to file frivolous pleadings (see 107 Ill. 2d R. 7—102(a)(2)), we consider the statutory amendment here to be in the nature of imposing a new obligation on the attorney, rather than merely adding a remedy for his violation of an existing obligation. Thus, we conclude that because the amended section 2—611 imposes a new obligation on the attorney, the trial court erred in applying that section retroactively against *plain-*

*tiffs' counsel.* However, since the obligations of the *party* are unchanged, we go on to determine whether the court properly applied section 2—611 as to plaintiffs.

■ Plaintiffs argue that the trial court erred in determining that the case at bar was not well-grounded in fact and warranted by existing law. We agree.

A lower court's decision assessing attorney fees is entitled to great weight and should not be disturbed unless there has been an abuse of discretion. (*Wollschlager v. Sundstrand Corp.* (1986), 143 Ill. App. 3d 347, 352.) In assessing fees against plaintiffs in the instant action, the trial court found that "[t]he pleadings filed in the within cause are frivolous and not well grounded in fact or in law." For the reasons set forth below, we believe the trial court abused its discretion in awarding Century 21 attorney fees.

Two recent cases under section 2—611 prior to its amendment provide some instruction. In *In re Marriage of Passiales* (1986), 144 Ill. App. 3d 629, 638, the court held that the trial court did not abuse its discretion in denying attorney fees where the litigant against whom they were sought, although having made a false statement, nonetheless did so under circumstances giving him reason to believe that the statement was true. Similarly, in *Wollschlager*, this court determined that the trial court did not abuse its discretion in denying a motion for attorney fees where the litigant against whom they were sought demonstrated an "unwaivering belief" and an "unfaultering [*sic*] conviction" that the basis upon which he made his claim was valid. (*Wollschlager* 143 Ill. App. 3d at 351-52.) The facts, circumstances, motive, intent, or purpose of the pleader are material in determining whether the allegations were made with reasonable cause. 143 Ill. App. 3d at 352.

In the instant action, Prevendar entered into a verbal agreement with Century 21 to manage plaintiffs' property and testified that she orally authorized Century 21 to repair the broken pipe. Prevendar subsequently entered into a written management agreement with Century 21 which provided that Century 21 would conduct repairs on the property. However, the terms of that written agreement required written authorization for repairs in excess of $49.99. Plaintiffs' cause of action is premised upon the written agreement; however, plaintiffs' theory of the case states that because Prevendar had previously orally authorized Century 21 to repair the broken pipe in the coach house, the written authorization requirement was not needed. The record demonstrates that Prevendar believed she had an agreement requiring Century 21 to fix the plumbing in the coach house prior to enter-

ing into the written management agreement. Furthermore, upon inquiry regarding Century 21's progress in collecting rents and getting the plumbing problems fixed, Prevendar was told that "they [were] tak[ing] care of it." From this representation, Prevendar may well have believed that Century 21 was in fact fixing the plumbing in the coach house. There is no evidence that plaintiffs brought the instant action against Century 21 for any improper purpose, such as to harass Century 21 or to cause unnecessary delay or needless increase in the cost of the litigation. (See Ill. Rev. Stat., 1986 Supp., ch. 110, par. 2—611.) The trial transcript indicates that plaintiffs made a good-faith argument based upon contractual theory. Although we agree with the trial court's disposition of the liability issue, we do not agree with the trial court that plaintiffs' cause of action under this theory is frivolous and not well-grounded in fact. Applying the provisions of section 2—611 under these circumstances and against these plaintiffs would be improper, as it would not serve the purposes of that section and would penalize the litigants simply because they were not successful in the litigation. Therefore, we reverse the trial court's decision ordering plaintiffs to pay Century 21's fees and costs.

Plaintiffs' final contention argues that the trial court erred in awarding fees against them in the amount specified. Given our disposition above, we need not reach this argument.

Accordingly, the trial court's judgment directing a verdict in favor of Century 21 and against plaintiffs is affirmed. The trial court's judgment assessing attorney fees against plaintiffs as to Century 21 and Century 21's counsel is reversed. Parties are to pay their own attorney fees and costs.

Affirmed in part; reversed in part.

LINDBERG, P.J., and WOODWARD, J., concur.