UNITED STATES of America,
Plaintiff–Appellee,

v.

Henry L. MILAM, Defendant–Appellant,

W. LaRue Boyce, Jr., Appellant.

No. 87–8342.

United States Court of Appeals,
Eleventh Circuit.

Sept. 19, 1988.

W. LaRue Boyce, Jr., Atlanta, Ga., pro se.

Richard H. James, Decatur, Ga., for Milam.

Robert L. Barr, Jr., U.S. Atty., Myles E. Eastwood, Asst. U.S. Atty., Atlanta, Ga., for the U.S.

Before KRAVITCH and CLARK, Circuit Judges, and NICHOLS *, Senior Circuit Judge.

* Honorable Philip Nichols, Jr., Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation.

KRAVITCH, Circuit Judge:

Henry L. Milam and his former attorney, W. LaRue Boyce, appeal the district court's imposition of sanctions against them for pursuing a frivolous statute of limitations defense in violation of Fed.R.Civ.P. 11. We affirm.

I.

This dispute arises out of an attempt by the United States to collect on three federally insured student loans that Milam obtained from the First National Bank of Chicago in the early 1970's. Milam borrowed a total of $4500 for study at Meharry Medical College in Nashville, Tennessee. The terms of the loans required Milam to begin repayment nine months after he ceased to carry at least half of a normal workload at an academic institution. Milam ceased to carry such a workload on or before June 1974, but he failed to make any repayments as required. Under the law applicable at the time, the loans went into default either 120 or 180 days after the nine-month period expired.[1] Milam was in default on his obligations by August 1975.

The statute of limitations applicable to contract actions for money damages brought by the United States, 28 U.S.C. § 2415(a), bars such actions "unless the complaint is filed within six years after the right of action accrues." Assuming the date of accrual of the government's action against Milam to be August 1975, the government should have brought its action on Milam's loans by August 1981.[2] None-

theless, Milam made two partial repayments on the loans in July and September 1983. By doing so, he invoked a provision in 28 U.S.C. § 2415(a) that "in the event of later partial payment or written acknowledgment of debt, the right of action shall be deemed to accrue again at the time of each such payment or acknowledgment." The language of the statute does not distinguish between partial payments made during the original limitation period and partial payments made after the sixth year. Milam's partial payments thus gave the government another six years to commence its action.

The government filed a complaint for the recovery of the remainder of the debt on April 9, 1985. Proceeding *pro se*, Milam filed a motion to dismiss, asserting that the action was barred by the statute of limitations. The district court denied Milam's motion and stated in a footnote that "if [the government's] version of the relevant events is correct, it will likely prevail on the statute of limitations issue." The district court cited 28 U.S.C. § 2415(a) as support for this observation. Milam failed to take the hint, however, and filed *pro se* an answer that alleged the statute of limitations as a defense. Milam thereafter filed an untimely amended answer through his attorney Boyce, again raising the statute of limitations. In an order permitting Milam to file the untimely amended answer, the district court warned that "this student loan troubles the Court.... [Milam] must be prepared to face the consequences of asserting a frivolous defense.... [D]efen-

---

1. Under 20 U.S.C.A. § 1080(e)(2) (1978), the term "default" included only defaults that existed for 120 days, if the loan was repayable in monthly installments, or for 180 days, if the loan was repayable in less frequent installments. The loan instruments signed by Milam do not indicate a schedule for repayment but state that a schedule is to be set forth in a separate instrument. We have not found any repayment schedule in the record on appeal.

Congress eliminated § 1080(e)(2) in the Higher Education Amendments of 1986, Pub.L. No. 99–498, § 430, 100 Stat. 1268, 1397–98.

2. The district court suggested that the limitation period commenced in 1976, when the government "apparently made payment [to First National Bank of Chicago] on [Milam's] student

loan." On the record before us we are unable to determine the basis for the district court's conclusion that the government made payment on the loan in 1976. The district court was correct, however, in concluding that the government's cause of action on a federally insured student loan accrues when the government pays the lender, not when the student first fails to pay the lender. *United States v. Olavarrieta*, 812 F.2d 640, 644 (11th Cir.) (per curiam), *cert. denied*, —— U.S. ——, 108 S.Ct. 152, 98 L.Ed.2d 107 (1987). We need not decide the precise date of the expiration of the limitation period, as Milam's partial repayments were made in 1983, which the parties agree was after the running of the limitation period.

dant's statute of limitations argument appears to be spurious. Defendant and his counsel should be advised that if the court's suspicions about the merits of his defense are confirmed, it will not hesitate to award plaintiff attorney's fees in prosecuting this action. *See* 28 U.S.C. §§ 1927, 2412(b). In addition, the Court is likely to impose sanctions against defendant and his counsel under Fed.R.Civ.P. 11."

Milam obtained new counsel, Richard James, after Boyce was suspended from the practice of law for six months by the Supreme Court of Georgia. James and the government's attorneys filed a preliminary statement pursuant to the local rules of the district court, stating that the applicability of the statute of limitations was the controlling issue in the case. The government then moved for summary judgment. Milam and his counsel failed to file any papers in response to the government's motion. The district court granted summary judgment for the government and directed Milam and his attorney to show cause why they should not be sanctioned pursuant to Rule 11.

After an evidentiary hearing,[3] the district court imposed sanctions on Milam and Boyce but not James.[4] The district court first concluded that Milam's motion to dismiss was frivolous in light of the plain language of the statute of limitations. The district court further determined that Milam should be held responsible for the actions taken by Boyce after Boyce assumed his representation, for "Milam played a prime role in establishing his litigation posture and indeed may well have dictated many of counsel's tactics." Boyce deserved sanctions, according to the district

court, because his assertion of the limitations defense on Milam's behalf "resulted from a failure to conduct the basic inquiry required by Rule 11." The district court held Milam and Boyce liable to the government for attorney's fees in the amount of $3,080, reflecting 44 hours of work at the rate of $70 per hour. The court additionally found "aggravating factors" for imposing further punitive sanctions on Milam, as Milam's steadfast refusal to recognize a valid debt was a "willful abuse of judicial resources," and levied an additional fine of $5000 on Milam.

## II.

Rule 11 of the Federal Rules of Civil Procedure provides in part:

> Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated. A party who is not represented by an attorney shall sign the party's pleading, motion, or other paper and state the party's address.... The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a

---

3. Appellants did not order the transcript of this hearing, thus greatly hampering our review of the district court's determination. The government has urged us to dismiss the appeal, as Fed.R.App.P. 10(b) requires an appellant either to include the entire transcript of proceedings below or to file and serve a statement of the issues that the appellant intends to present on appeal within ten days of filing the notice of appeal. The appellants in this case have taken neither action, and we have dismissed appeals in such circumstances. *See, e.g., Abood v. Block,* 752 F.2d 548, 550 (11th Cir.1985) (per curiam); *cf.* 11th Cir.R. 42–1. We decline to do

so in this case, as the district court issued a memorandum order on the Rule 11 issue (unlike *Abood,* where the district court's findings which appellant sought to overturn were made orally), and as appellants have brought up the rest of the record on appeal. We are not inclined, however, to give appellants the benefit of any doubt in the absence of a transcript which they should have ordered.

4. The district court concluded that James "basically steered the course chartered by Milam and Boyce."

pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

This court recently had occasion to consider the application of Rule 11 in *Donaldson v. Clark*, 819 F.2d 1551 (11th Cir.1987) (en banc). In *Donaldson*, we noted that Rule 11 sanctions were designed to "discourage dilatory or abusive tactics and help to streamline the litigation process by lessening frivolous claims or defenses." *Id.* at 1556 (citation omitted). We further observed that at least three distinct, but at times overlapping, types of conduct by a party or attorney might warrant the imposition of Rule 11 sanctions. First, a party might file a pleading or other paper that has no reasonable factual basis. Second, a party might advance a legal theory that has no reasonable chance of success under the state of the decisional and statutory law and that cannot be advanced as a reasonable argument to reverse, modify, or extend the law. Third, a party might file a motion or pleading for purposes of harassment or delay. In *Donaldson* we distinguished these three kinds of behavior in establishing standards for appellate review of a district court's decision to impose Rule 11 sanctions: "Whether (1) factual or (2) dilatory or bad faith reasons exist to impose Rule 11 sanctions is for the district court to decide subject to review for abuse of discretion; on the other hand, a decision whether a pleading or motion is legally sufficient involves a question of law subject to *de novo* review by this court." *Id.* at 1556.[5]

Parties appealing from Rule 11 sanction orders should also understand that appellate review of the district court's conclusion that certain behavior warrants sanctions is conceptually distinct from appellate review of the particular sanction imposed. This distinction should be apparent from a general appreciation of the operation of Rule 11 and from a reading of the *Donaldson* opinion. In *Donaldson*, the district court ordered the appellant to pay reasonable attorney's fees to the appellees and additionally fined the appellant $500. *Id.* at 1554. We gave extended consideration to the propriety of ordering a party to pay a financial penalty in addition to costs and attorney's fees. *Id.* at 1556–58. As appellate review of Rule 11 sanction orders becomes more common, the issue of whether a particular sanction is appropriate undoubtedly will develop parts and sub-parts. For example, an appellant might urge us to consider whether the district court should have sanctioned the attorney as opposed to the represented party;[6] whether the particular type of sanction was appropriate;[7] and whether the particular sanction imposed was excessive.

We mention this distinction between review of the decision to impose sanctions and review of the actual sanction imposed because appellants urged at oral argument that the fine imposed by the district court was excessive. Assuming *arguendo* that appellants' actions warranted sanctions, we

---

5. In establishing this tripartite standard of review, we joined the D.C. Circuit. *See Westmoreland v. CBS, Inc.,* 770 F.2d 1168, 1174–75 (D.C. Cir.1985). Other circuits employ different combinations of standards, and still others apply an "across-the-board" abuse-of-discretion standard of review. *See generally Thomas v. Capital Security Services, Inc.,* 836 F.2d 866, 872–73 (5th Cir.1988) (en banc) (reviewing cases).

6. Rule 11 permits the district court to impose sanctions on "the person who signed [a paper filed in federal district court], a represented party, or both."

7. In *Donaldson,* we discussed various kinds of sanctions available to the district court. 819 F.2d at 1557 & nn. 6–7. We noted that certain drastic remedies such as dismissing a case entirely "are to be used only in extreme situations as the court has a wide range of lesser sanctions that will not deprive the litigant of his or her day in court." *Id.* at 1557 n. 6. We further held that the type of sanction to be imposed lies within the district court's sound exercise of discretion. *Id.* at 1557.

do have concerns about the district court's decision to impose an additional $5000 fine on Milam. Milam's "personal financial statement" contained in the record suggests that Milam is unemployed and has assets totalling $300 and liabilities totalling $16,800 (including his student loans).[8] Although we have approved in general the practice of levying a fine on the represented party in addition to ordering a party to pay attorney's fees, *see Donaldson*, 819 F.2d at 1557, we suggest that fining a represented party is a very severe sanction that should be imposed with sensitivity to the facts of the case and to the party's financial situation.

██ We do not address whether the $5000 fine or the calculation of attorney's fees was excessive, however, because we agree with the government that appellants have waived this point on appeal. Appellants filed a general notice of appeal from the sanctions order, but their briefs state that the issue on appeal is "Whether the Defense of statute of limitations to Dr. Milam's student loan action was so non-meritorious as to invoke the punitive sanctions of Rule 11." Although we have a practice of reading briefs liberally to ascertain the issues raised on appeal, *see FSLIC v. Haralson*, 813 F.2d 370, 373 n. 3 (11th Cir.1987), we cannot read the appellants' briefs fairly to argue that the sanction imposed by the district court was excessive. As we indicated above, the question of whether the actual sanction imposed was excessive is sufficiently distinct from the question of whether the party's behavior warranted sanctions at all as to constitute a separate issue. Intentionally or not, the appellants in this case took an "all or nothing" approach to the district court's decision to impose sanctions. Accordingly, we deem abandoned all issues except the issue treated in appellants' briefs: whether their behavior was so unreasonable as to warrant sanctions. *Accord Rogero v. Noone*, 704 F.2d 518, 520 n. 1 (11th Cir.1983); *Har-*

*ris v. Plastics Manufacturing Co.*, 617 F.2d 438, 440 (5th Cir.1980).[9]

Furthermore, even if we were inclined to relax the abandonment rule, this would not be an appropriate case to do so. The district court decided to impose a particularly severe sanction on Milam after an evidentiary hearing at which a government witness apparently testified that Milam had maintained an extraordinarily belligerent litigation posture. After considering this testimony, the district court concluded that Milam was "the principal actor." As we observed *supra* note 3, appellants have not complied with Fed.R.App.P. 10(b), which directs the appellant either to include a transcript of the proceedings in the record on appeal or to file and serve a statement of the issues that the appellant intends to raise on appeal. Without the transcript of the sanctions hearing, we cannot determine whether the district court erred in concluding that Milam deserved additional sanctions as "the principal actor."

### III.

██ "Rule 11 as amended incorporates an objective standard. The standard for testing conduct under amended Rule 11 is 'reasonableness under the circumstances,' a standard 'more stringent than the original good-faith formula.'" *Donaldson*, 819 F.2d at 1556 (citations omitted). The district court concluded that Milam and Boyce acted unreasonably in advancing the argument that a partial repayment of a debt made after the running of the original limitation period is "gratuitous" and does not restart the limitation period. This appeal implicates the legal sufficiency of the pleadings and motions filed below; therefore we review the district court's conclusion of unreasonableness *de novo*. *Id.*

We agree with the district court that Milam and Boyce acted unreasonably. The plain language of the applicable statute of limitations, 28 U.S.C. § 2415(a), which the

---

8. We will assume that the information contained in this form is accurate.

9. The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209

(11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

district court cited in its order denying Milam's motion to dismiss, expressly provides that "in the event of later partial payment or written acknowledgment of debt, the right of action shall be deemed to accrue again at the time of each such payment or acknowledgment." The statute makes no distinction between payments made during the original limitation period and payments made after the period.

To be sure, section 2415(a) does not explicitly state that the proviso restarting the limitation period applies to payments made after the original six years. Basic research into the common law of contracts, however, would have demonstrated to the appellants the unanimous conclusion of the commentators that partial payment of a debt restarts the limitation period even when that payment is made after the original period has run. Two of the most accessible sources of information about the law, *American Jurisprudence* and the *Restatement of Contracts*, state the common law rule:

> Although in many jurisdictions statutes now control the effect of a part payment as starting the limitation period running anew, the doctrine that the time during which an action may be brought may be enlarged by a part payment antedates such statutory provisions and originally began at an early date as a judicially engrafted qualification of or exception to the operation of statutes of limitation. Accordingly, and in the absence of any statutory modification or change, the generally prevailing rule is that a part payment which complies with the requisites hereinafter discussed will start the limitation period running anew, whether the part payment is made before or after the original obligation has become barred.
>
> . . . .
>
> Except in jurisdictions in which, by virtue of statute, a part payment to toll the statute of limitations is required to be made before the cause of action is barred, it is the general rule that the limitation period may be started anew by a part payment which is made either before or after the original obligation has become barred.

51 Am.Jur.2d *Limitation of Actions* §§ 360, 363 (1970).

> A promise to pay all or part of an antecedent contractual or quasi-contractual indebtedness owed by the promisor is binding if the indebtedness is still enforceable or would be except for the effect of a statute of limitations.
>
> The following facts operate as such a promise unless other facts indicate a different intention:
>
> . . . .
>
> (b) A voluntary transfer of money, a negotiable instrument, or other thing by the obligor to the obligee, made as interest on or part payment of or collateral security for the antecedent indebtedness. . . .

*Restatement (Second) of Contracts* § 82 (1981).

While overlooking or disregarding these informative sources, appellants informed the district court that the statute of limitations defense had been "presented for review" in four cases: *United States v. Whitesell*, 563 F.Supp. 1355 (D.S.D.1983); *United States v. Kendrick*, 554 F.Supp. 121 (E.D.Ark.1982); *United States v. Frisk*, 530 F.Supp. 238 (N.D.Cal.1980), *aff'd*, 675 F.2d 1079 (9th Cir.1982); *United States v. Lucas*, 516 F.Supp. 934 (E.D.Tex. 1981); and *United States v. DeGusta*, 512 F.Supp. 1299 (E.D.Cal.1981). None of these cases concerns the effect of a partial repayment made after the limitation period. The first four involve whether the limitation period for the government's recovery on a federally insured student loan begins when the borrower first fails to make payment or when the government repays the loan to the lender. The fifth case concerns the effect on the limitation period of the now-repealed 20 U.S.C. § 1080(e)(2), which defined the term "default" to include only defaults on federally insured student loans that existed for 120 days after an installment was due.

We bear in mind, of course, that Rule 11 was not intended "to chill innovative theories and vigorous advocacy that bring about vital and positive changes in the law. . . . It does not mean the end of doc-

trinal development, novel legal arguments, or cases of first impression." *Donaldson,* 819 F.2d at 1561. But when parties attempt to pursue civil litigation with legal theories apparently foreclosed by statute and precedent, they must do so with candor toward the court and with a sense of whether their argument is appropriate and reasonable. Appellants did not indicate, for example, that they sought the reversal of precedent holding that statutes of limitations exist as a matter of legislative grace and that provisions tolling such statutes are constitutional. Appellants did not suggest that Congress intended to deviate from common law rules about the operation of statutes of limitation when it enacted 28 U.S.C. § 2415(a). Nor did they bring to the attention of the district court any state court decisions, from which the district court could have drawn an appropriate analogy, holding that partial repayments made after the limitation period did not restart the period. Appellants neither examined nor relied on arguments based on legislative history, analogy, public policy, principles of equity, or constitutional law. Instead they simply asserted, without any reasonable basis, that the government's action was barred by the statute of limitations.

AFFIRMED.