CHICAGO TITLE & TRUST COMPANY, as Trustee, Plaintiff-Appellee, v. GEORGE E. ANDERSON *et al.*, Defendants-Appellants.

First District (4th Division)  No. 87—3703

Opinion filed December 29, 1988.—Rehearng denied January 24, 1989.

Aaron Spivack, of Chicago, for appellants.

Arnold M. Flank, of Chicago, for appellee.

JUSTICE McMORROW delivered the opinion of the court:

Defendant George E. Anderson (Anderson) and his attorney Aaron Spivack (Spivack) appeal from a trial court order requiring

them to pay a portion of plaintiff's attorney fees as a sanction pursuant to section 2—611 of the Illinois Code of Civil Procedure (Code) (Ill. Rev. Stat. 1987, ch. 110, par. 2—611). Plaintiff argued that sanction was appropriate because of allegedly erroneous factual assertions made in Anderson's answer to plaintiff's complaint and Anderson's allegedly improper opposition to plaintiff's motion for summary judgment. Anderson's answer and response to the summary judgment motion arose from a mortgage foreclosure action instituted by plaintiff against Anderson.[1] The challenged factual assertions stated in essence that Anderson had not defaulted on the mortgage payments and related expenses.

Spivack represented Anderson in the mortgage foreclosure proceeding and filed the answer and response on Anderson's behalf. Eventually plaintiff prevailed on the merits pursuant to its motion for summary judgment. Thereafter, upon plaintiff's motion, the trial court imposed an attorney fee sanction against both Anderson and Spivack based upon their violations of section 2—611. The court apparently determined that Anderson failed to make a reasonable inquiry to support the factual representations made in his answer to plaintiff's complaint. The trial court further determined that an objective assessment of the documentary evidence produced by Anderson during discovery should have prompted Spivack to realize that his client was in default, and that Spivack should have so admitted when plaintiff filed its motion for summary judgment.

Because we find that the trial court's decision was not an abuse of discretion, we affirm.

BACKGROUND

The following chronology derives from both plaintiff's mortgage foreclosure action and the court's subsequent sanction hearing.

The mortgage agreement at issue in plaintiff's foreclosure action was executed by plaintiff and Anderson on March 10, 1986, and was secured by commercial real estate located at 615-21 West 103rd Street in Chicago. According to the agreement, Anderson was to pay monthly installments of principal and interest in the amount of $1,080.15 and monthly deposits for real estate taxes and insurance premiums. At the time suit was filed, the aggregate of these sums amounted to approximately $1,600. The record does not disclose

---

[1]At the time the plaintiff moved for sanctions, Edward M. Robinson was involved in bankruptcy proceedings. For that reason, no sanction order was entered against him and he is not a party to this appeal.

whether Anderson made separate payments for the mortgage, insurance premiums, and real estate taxes, or whether these amounts were due in one consolidated monthly payment.

Plaintiff filed its complaint to foreclose on the mortgage on January 5, 1987. The complaint alleged the following in paragraph 3(i):

"Defaults and amount now due: The mortgagors, George E. Anderson and Edward M. Robinson, are in default of the Mortgage and of the Note, having made only full monthly payments to and including September 1986, and one partial monthly payment in October 1986, and no monthly payments have been [sic] since October 1986. There is in default payments due as of the filing of this lawsuit in the amount of $2,795.45 for monthly installments of principal and interest, together with the sum of $784.55 for unpaid deposits of real estate taxes and insurance premiums through the present *** ."

Attorney Spivack filed an appearance on Anderson's behalf on February 20, 1987, and was granted leave to file an answer to the complaint *instanter* on March 23. This answer, signed by Spivack, was comprised of general admissions to or denials of each paragraph alleged in plaintiff's complaint. Thus Anderson's answer stated that he "den[ied] allegations in paragraph 3(i)." Anderson also denied two other paragraphs in plaintiff's complaint, one of which also pertained to mortgage default, but these denials are not at issue in this appeal.

According to Spivack, the denial of default stated in Anderson's answer derived from Anderson's representation to Spivack that Anderson believed his payments were current. Anderson also told Spivack that he did not have all the documents to prove that payments were current, because former tenants of the property had been making rental payments directly to the mortgage holder in the form of third-party checks. Spivack later also explained to the court at the sanction hearing that he did not ask for documents to show that payments were current, and that he "never do[es] if [he] represent[s] someone like this."

Approximately a week after Anderson answered the complaint, plaintiff filed a request that Anderson produce documents to support the denials recited in his answer, including specifically the paragraph 3(i) denial. In his response with respect to paragraph 3(i), filed July 2, 1987, Anderson provided a group exhibit and stated that he was "unable to locate all payments." The group exhibit included two cancelled currency exchange checks from third parties to plaintiff's agent dated November 10, 1986, indicating payment of $620 and $720, respectively.

When Anderson gave these documents to Spivack to file in response to plaintiff's motion to produce, Anderson told Spivack that he did not have the remaining documents to prove that his payments were current and that he could not recall how many were missing. Anderson presented the documents only after Spivack had threatened to withdraw if Anderson did not present proof of payment to respond to plaintiff's request to produce. Spivack never attempted to subpoena the tenants from whom checks should have been sent to pay the mortgage because Anderson told him the tenants could not be located. Spivack told Anderson to find the third parties and obtain copies of the cancelled checks that had been submitted by them for payment of the mortgage.

Plaintiff then filed a motion for summary judgment, arguing that Anderson had not produced sufficient documents to demonstrate that his payments were current. In his response to the summary judgment motion, Anderson did not request additional time to produce remaining documents to prove that he was not in default. Anderson's response to the summary judgment also did not specifically admit or dispute that he was in default. Instead, Anderson "denied the allegations" in plaintiff's summary judgment motion and argued that judgment should not be entered in favor of plaintiff because the parties were attempting to negotiate Anderson's payment of amounts outstanding on the mortgage and related expenses. Finding no dispute on the issue of whether Anderson was in default on the mortgage and related payments, the trial court entered judgment of foreclosure and sale of the property.

Thereafter plaintiff filed its motion for sanctions pursuant to section 2—611 of the Code. Plaintiff contended in the alternative that, either from the date on which Anderson's answer was filed, or from the date on which Anderson filed his response to the request to produce documents: (1) Anderson knew that the denials stated in his answer were false; and (2) Spivack knew or based on reasonable inquiry should have known that the denials stated in the answer were false. In response, Anderson and Spivack did, *inter alia,* concede that they realized the mortgage was in default at some point after they filed the response to plaintiff's request to produce, although they could not recall precisely when they had so realized.

Based upon this information, the trial court entered an order that sanctioned Anderson in the amount of $2,172 in attorney fees, for legal services provided to plaintiff from the date on which Anderson filed his answer to plaintiff's complaint. The trial court's order also sanctioned Spivack in the amount of $1,152 in attorney fees, for legal

services provided to plaintiff from the date on which Anderson's response to the request to produce was filed. In the court's oral pronouncements, it noted that it would give Spivack "the benefit of the doubt, for purposes of the answer, [that he would] want to get the answer in time."

The court's order recited that enforcement thereof was stayed pending sale of the premises, noting that "plaintiff [is] not to enforce this order if plaintiff recovers the full amount of the judgment of foreclosure from the sale of the premises." The court's order also stated that plaintiff was "not to recover attorney's fees and sanctions twice." Anderson and Spivack appeal from the trial court's order. Spivack continues to represent Anderson in this appeal.

OPINION

██Section 2—611 currently requires that an attorney or a *pro se* party sign pleadings and other legal papers filed with the court. (Ill. Rev. Stat. 1987, ch. 110, par. 2—611.) This signature "constitutes a certificate *** that he has read the document, has made a reasonable inquiry into its basis, and believes that it is well-grounded in fact and law." (*Prevendar v. Thonn* (1988), 166 Ill. App. 3d 30, 37, 518 N.E.2d 1374.) If a reasonable inquiry into the facts to support the pleading or legal paper has not been made to ensure that the facts stated therein are well-grounded, "the party, the party's attorney, or both [shall be subject] to an appropriate sanction which may include an order to pay the other party's attorney fees and costs." (*Prevendar*, 166 Ill. App. 3d at 38.) Section 2—611 is virtually identical to Rule 11 of the Federal Rules of Civil Procedure, and we therefore look to Federal precedent for guidance in the application of section 2—611 to this case. See *Frisch Contracting Service Co. v. Personnel Protection, Inc.* (1987), 158 Ill. App. 3d 218, 224, 511 N.E.2d 831; see generally Cavanaugh, *Developing Standards Under Amended Rule 11 of the Federal Rules of Civil Procedure*, 14 Hofstra L. Rev. 499 (1986); Nelken, *Sanctions Under Amended Federal Rule 11—Some "Chilling" Problems in the Struggle Between Compensation & Punishment*, 74 Geo. L. Rev. 1313 (1986); Yeomans, *How to Avoid Rule 11 Sanctions*, 34 Prac. Law. 61 (1988); Joseph, *Rule 11 Makes Its Mark in Illinois*, C.B.A Rec. 22, Nov. 1988.

██ Initially we note that plaintiff argues sanctions under section 2—611 were properly imposed because Anderson and Spivack never produced sufficient documents to support Anderson's denial of plaintiff's default allegation. We disagree. The purpose of section 2—611 is not to "penalize the litigants simply because they were not successful

in the litigation." (*Prevendar v. Thonn* (1988), 166 Ill. App. 3d 30, 41, 518 N.E.2d 1374.) As the Federal courts have stated with respect to Rule 11, the counterpart to section 2—611, " 'Nothing in the language of the Rule or the Advisory Committee Notes supports the view that the Rule empowers the [trial] court to impose sanctions on lawyers simply because a particular argument or ground for relief [or factual theory] is found by the [trial] court to be unjustified.' " (*Brown v. Federation of State Medical Boards* (7th Cir. 1987), 830 F.2d 1429, 1434 n.2, quoting *Golden Eagle Distributing Corp. v. Burroughs Corp.* (9th Cir. 1986), 801 F.2d 1531, 1540-41; see also *FDIC v. Tekfen Construction & Installation Co.* (7th Cir. 1988), 847 F.2d 440, 443-44.) Thus, "[i]t is not per se unreasonable to initiate a lawsuit and pursue a possible claim where the defendant may have a strong defense." (*Mihalik v. Pro Arts, Inc.* (6th Cir. 1988), 851 F.2d 790, 794.) Nor would it be *per se* unreasonable to present a possible defense simply because the plaintiff may have a strong claim.

The central question presented to the trial court was whether Anderson and Spivack failed to make a reasonable inquiry into the facts supporting Anderson's position that he was not in default. Anderson and Spivack admitted to the trial court that they realized Anderson was in default at some point after Anderson presented the documents submitted in response to plaintiff's request to produce. The trial court concluded that a reasonable factual inquiry by Anderson would have prompted him to realize he was in default before his answer to plaintiff's complaint was ever filed. The trial court found that Anderson's failure to conduct a reasonable factual inquiry before filing his answer to plaintiff's complaint violated section 2—611. The trial court also determined that an independent assessment of Anderson's position by Spivack should have prompted Spivack to realize that Anderson was in default when Anderson was unable to locate all the documents needed to respond to plaintiff's discovery request. The trial court found that Spivack's failure to candidly admit that Anderson was in default, in the response to plaintiff's summary judgment motion, constituted a violation of section 2—611.

■ Section 2—611 imposes upon both client and counsel the duty to make a reasonable inquiry into the facts to support a legal claim or defense before pleadings and other legal papers are filed with the court. (See, *e.g.*, *United States v. Milam* (11th Cir. 1988), 855 F.2d 739; *Continental Air Lines, Inc. v. Group Systems International Far East, Ltd.* (C.D. Cal. 1986), 109 F.R.D. 594, 600; Advisory Committee Notes to Federal Rule 11, 97 F.R.D. 165, 200 (1983).) An attorney and his client "can[not] blind themselves to what is readily apparent ***.

Counsel [and client] may not 'file now and investigate later.' " *In re Mitan* (1987), 119 Ill. 2d 229, 255, 518 N.E.2d 1000 (applying principles of Federal Rule 11 and Illinois section 2—611 to filing of petition for reinstatement of law license to conclude that counsel for petitioner must make an objectively reasonable inquiry into the facts supporting the petition).

■ Whether a particular inquiry was "reasonable" must be determined by an objective standard based upon the circumstances existing at the time the pleading or other legal paper was presented to the court. (*Oliveri v. Thompson* (2d Cir. 1986), 803 F.2d 1265, 1274; *Golden Eagle*, 801 F.2d at 1536.) "Like a snapshot, Rule 11 review focuses upon the instant when the picture is taken—when the signature is placed on the document." (*Thomas v. Capital Security Services, Inc.* (5th Cir. 1988), 836 F.2d 866, 874 (*en banc*).) In this regard, the advisory committee notes to Federal Rule 11 state:

"The rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories. The court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted. Thus, what constitutes a reasonable inquiry may depend on such factors as how much time for investigation was available to the signer; whether he had to rely on a client for information as to the facts underlying the pleading, motion, or other paper; whether the pleading, motion, or other paper was based on a plausible view of the law; or whether he depended on forwarding counsel or another member of the bar." Advisory Committee Notes to Federal Rule 11, 97 F.R.D. 165, 199 (1983).

Judge Schwarzer offers the following relevant observations with respect to the advisory committee's comments:

"Why does the rule require the attorney to certify that he has read the paper? The purpose plainly is not to penalize a lawyer for failing to read it but to eliminate ignorance as an excuse. There is no room for a pure heart, empty head defense under Rule 11.

This purpose is also served by the requirement that a reasonable inquiry be made. ***

The [advisory committee] comments raise the question whether signing counsel may satisfy his obligation under the rule by showing that his client or another lawyer gave him the information or approved the paper. It is not unusual for prefil-

ing inquiry to be made by someone other than the signing attorney due to economic necessity, time pressures or the need for expertise. To what extent will such an inquiry satisfy the signing attorney's obligation?

The rule by its terms does not require signing counsel to have personally performed the inquiry. What it does require is that signing counsel have the requisite 'knowledge, information, and belief.' Conclusory statements from a client or another attorney that, for example, a car had been driven negligently, sales occurred in violation of a trademark, or certain persons conspired to deny plaintiff's constitutional rights, do not without more afford the lawyer a basis for certifying knowledge, information and belief. Regardless of how firmly the attorney may believe such statements from his client, he needs facts on which to ground knowledge, information or belief.

What is crucial under the rule is not who makes the inquiry, but whether as a result the *attorney* has acquired knowledge of facts sufficient to enable him to certify that a paper is well-grounded in fact. If the rule is to have meaning, those facts must consist of admissible evidence or at least be calculated to lead to such evidence. They need not be undisputed or indisputable but they must be sufficiently substantial to support a reasonable belief in the existence of a factual basis for the paper. Suspicion, rumor or surmise will not do.

The duty of inquiry therefore should be regarded as nondelegable but capable of being satisfied by the attorney's acquisition of the product of inquiry conducted by others. Thus if the client furnishes facts to the attorney which he can reasonably believe, there should be no need fur further inquiry to satisfy the rule. But if all the attorney has is his client's assurance that facts exist, he has not satisfied his obligation.'' (Emphasis in original.) Schwarzer, *Sanctions Under the New Federal Rule 11—A Closer Look,* 104 F.R.D. 181, 186-87 (1985).

■ Thus, as a general rule, an attorney cannot simply rely on the client's verbal representations when the client has in his possession additional information bearing on the facts, or when the additional information is readily ascertainable from third parties. (See, *e.g., Kamen v. American Telephone & Telegraph Co.* (2d Cir. 1986), 791 F.2d 1006; *Albright v. Upjohn Co.* (6th Cir. 1986), 788 F.2d 1217; *Lebovitz v. Miller* (7th Cir. 1988), 856 F.2d 902; *Medical Emergency Service Association v. Foulke* (7th Cir. 1988), 844 F.2d 391; *Coburn Optical Industries, Inc. v. Cilco, Inc.* (M.D.N.C. 1985), 610 F. Supp. 66; *Wold*

*v. Minerals Engineering Co.* (D. Colo. 1983), 575 F. Supp. 166; *Continental Air Lines, Inc.*, 109 F.R.D. 594.) In addition, the attorney must objectively review the information submitted by his client, to determine if it factually supports the client's claim; if such review reveals important discrepancies, inconsistencies, or gaps in the information provided, the attorney must investigate further before filing the relevant legal paper with the court. See *Lebovitz v. Miller* (7th Cir. 1988), 856 F.2d 902; *Adamson v. Bowen* (10th Cir. 1988), 855 F.2d 668; *In re Mitan*, 119 Ill. 2d 229.

■■ ■ " 'The amount of investigation required by Rule 11 [and section 2—611] depends on both the time available to investigate and on the probability that more investigation will turn up important evidence; the Rule does not require steps that are not cost-justified' " (*Beeman v. Fiester* (7th Cir. 1988), 852 F.2d 206, 211, quoting *Szabo Food Service, Inc. v. Canteen Corp.* (7th Cir. 1987), 823 F.2d 1073, 1083), and " 'the signer's investigation need not be carried to the point of certainty' " (*Lebovitz v. Miller*, 856 F.2d at 905, quoting *Fred A. Smith Lumber Co. v. Edidin* (7th Cir. 1988), 854 F.2d 750, 751). Investigation must be accomplished with respect to each allegation in a pleading, as well as each denial (whether general or specific), although the important consideration is whether such investigation was performed, not whether the pleading itself was inartfully drafted. See *Beeman v. Fiester*, 852 F.2d at 211; *Frantz v. U.S. Powerlifting Federation* (7th Cir. 1987), 836 F.2d 1063, 1068; *cf. Rodgers v. Lincoln Towing Service, Inc.* (7th Cir. 1985), 771 F.2d 194, 205.

■■ Illinois courts have applied an abuse of discretion standard to review trial court sanction awards (see, *e.g., Washington v. Allstate Insurance Co.* (1988), 175 Ill. App. 3d 574, although the Federal circuits are in conflict over the proper standard of review. (See, *e.g., Thomas*, 836 F.2d at 872-73; *FDIC*, 847 F.2d at 442-43; *United States v. Milam*, 855 F.2d at 742; *Adamson v. Bowen*, 855 F.2d at 672-73; *Lebovitz v. Miller*, 856 F.2d 902.) Since the parties do not argue that this court should adopt a particular standard from the Federal courts, we adhere to Illinois precedent applying the abuse of discretion standard.

■■ Based upon the principles set forth above, we find no basis in the record to disturb the trial court's decision that Anderson failed to make a reasonable factual inquiry to support his denial of plaintiff's default allegation. Anderson asserted that he properly denied plaintiff's default allegation without documentary proof thereof because this evidence was in the possession of third parties who were former tenants of the property and made rental payments directly to the

plaintiff's agent; these rental payments were to constitute Anderson's payment of the mortgage and related expenses.

The trial court apparently disbelieved Anderson's explanation that these circumstances rendered him unable to perform a more complete factual investigation before he denied plaintiff's default allegation, and we are unable to conclude that the court's decision was in error. The alleged date of Anderson's default was only a short period prior to plaintiff's initiation of the lawsuit, and there is nothing in the record to indicate that any former tenants who had made payments on Anderson's behalf would have been difficult for Anderson to locate before his answer to plaintiff's complaint was filed. We cannot say on this record that the trial court's determination was an abuse of its discretion.

■■■ We further find no ground to upset the trial court's conclusion that Spivack violated section 2—611. Spivack admitted that he became aware that Anderson was in default at some point after Anderson responded to plaintiff's discovery request. Based upon this admission by Spivack, the court recognized that Spivack likely knew Anderson was in default prior to the filing of Anderson's response to plaintiff's summary judgment motion. The court reasoned that if Spivack had complied with the requirements of section 2—611 and had objectively assessed Anderson's inability to present sufficient documents in response to plaintiff's discovery request, Spivack would have realized when he filed the response to plaintiff's discovery request that Anderson was in default. Given the circumstances that Anderson was only alleged to be a few months in default, and that former tenants should not have been difficult for Anderson to locate, we can find no abuse of discretion in this factual determination by the trial court. Also, based on the precedent set forth above, we find no legal error in the trial court's determination that Spivack was obligated to perform an objective assessment of the evidence, or lack thereof, to support Anderson's position that he was not in default.

■■■ The trial court also correctly concluded that once Spivack was aware that Anderson was in default, Spivack had a duty to so admit in the response to plaintiff's summary judgment motion. Where a pleading appears well-grounded in fact when filed but is later discovered by subsequent circumstances or evidence to be unfounded, section 2—611 does not require counsel to revise the pleadings to conform with the newly discovered information. (*Pantry Queen Foods, Inc. v. Lifschultz Fast Freight, Inc.* (7th Cir. 1987), 709 F.2d 451, 454.) Nevertheless counsel cannot simply remain silent when faced with this newly discovered information, file additional papers with the

court that do not reveal the more recent discoveries, and by such silence allow court and opposing counsel to draw erroneous conclusions or proceed on improper assumptions. Instead, once it appears that the prior factual allegation is in error, this must be brought forthrightly to the attention of court and opposing counsel, at the least in the next available court filing. (*Herron v. Jupiter Transportation Co.* (6th Cir. 1988), 858 F.2d 332, 336, citing *City of Yonkers v. Otis Elevator Co.* (2d Cir. 1988), 844 F.2d 42, 49, and *Flip Side Productions, Inc. v. Jam Productions Ltd.* (7th Cir. 1988), 843 F.2d 1024, 1036; *Thomas,* 836 F.2d at 784-85; *Coburn Optical Industries, Inc. v. Cilco, Inc.* (M.D.N.C. 1985), 610 F. Supp. 656; *Schwarzer,* 104 F.R.D. at 189.) In light of this precedent, the trial court was wholly justified in concluding that Spivack violated section 2—611 when he failed to admit in the response to plaintiff's summary judgment motion that Anderson was in default.

▅ Lastly, Anderson and Spivack argue that the court's sanction award of portions of plaintiff's attorney fees was in error. Anderson and Spivack contend that the court's award of attorney fees incorrectly permits plaintiff double recovery of its attorney fees, because plaintiff was also awarded attorney fees in the mortgage foreclosure judgment. However, the trial court's written sanction order specifically states that plaintiff is "not to recover attorney's fees and sanctions twice." Given these considerations, we find the argument of Anderson and Spivack in this respect insufficient ground to disturb the court's sanction of attorney fees.

For the reasons stated, the order of the circuit court of Cook County is affirmed.

Affirmed.

JIGANTI, P.J., and JOHNSON, J., concur.