*In re* CUSTODY OF YVONNE GENEVIEVE CARUSO, a Minor (Frank A. Caruso, Petitioner-Appellee, v. Elizabeth Murphy, Respondent-Appellant).

First District (4th Division)   No. 1—87—3819

Opinion filed June 22, 1989.

Walter A. Hess, of Chicago, for appellant.

Joan I. Norek, of Chicago, for appellee.

JUSTICE LINN delivered the opinion of the court:

The circuit court of Cook County awarded attorney fees and costs to petitioner, Frank Caruso, under section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—611). The court entered the order against respondent, Elizabeth Murphy, now known as Elizabeth Smeja, and Elizabeth's attorney, Walter Hess. Elizabeth appeals, contending: (1) the present version of section 2—611 was not in effect at the time the parties filed their pleadings, and (2) the trial court abused its discretion in making the award.

We affirm the order of the trial court in all respects.

BACKGROUND

The record shows that on June 19, 1985, Frank petitioned the trial court for custody of Yvonne. (See Ill. Rev. Stat. 1985, ch. 40, par. 601.) Frank alleged, *inter alia*, that Yvonne was born on October 4, 1984, that he was her father, and that it would be in Yvonne's best interests for her to be placed in his custody. Elizabeth filed her response to Frank's custody petition on December 3, 1985. Elizabeth alleged, *inter alia*, that Frank was not Elizabeth's father.

On January 8, 1986, the trial court ordered that Frank, Elizabeth, and Yvonne be administered the necessary blood tests to determine Frank's paternity. On January 22, 1987, the court held a contested trial on the issue of paternity. On February 5, 1987, the trial court entered an order declaring Frank to be Yvonne's natural father.

In addition to its paternity order, the trial court also granted Frank leave to file a petition for sanctions pursuant to section 2—611. Frank charged Elizabeth with contesting his paternity despite the following pertinent facts: (1) Frank was in the hospital delivery room with Elizabeth, with her consent, when Yvonne was born; (2) Frank is named as Yvonne's father on her birth certificate, the truth of which Elizabeth certified; (3) blood tests were sent to Hess, Elizabeth's attorney, around March 7, 1986, showing a 99.99% probability that Frank was Yvonne's father; (4) Frank and Elizabeth lived together during the time of Yvonne's conception; and (5) only Elizabeth could have obtained a court order, *via* a paternity action, requiring blood testing of a man outside of the present lawsuit, and that she never brought such an action by the time of the paternity trial.

Frank additionally alleged that Elizabeth delayed the paternity trial twice, once to locate a man for blood testing, and the second continuance for obtaining the blood tests; at the paternity trial, Elizabeth submitted no evidence of any other blood test, her sole evidence was her uncorroborated testimony that she and Frank did not have inti-

mate relations during the time of Yvonne's conception; and the trial court found this testimony unworthy of belief.

On February 18, 1987, Elizabeth filed a "Third Party Complaint for Paternity," in which she named the above-mentioned man as Yvonne's father. Elizabeth filed her response to Frank's petition for sanctions on March 27, 1987. She again claimed that Frank was not Yvonne's father. Elizabeth's pertinent allegations included: Yvonne's birth certificate did not name Frank as the father when Elizabeth signed it, but Frank later agreed to have his name entered as the father; the paternity test assumed that Frank and Elizabeth had intimate relations, which they did not; and assuming intimate relations had occurred, the probability of Frank's paternity would not be 99.99%, but rather only 99%.

Elizabeth also alleged that the man who she claimed to be Yvonne's father admitted his paternity and was initially willing to undergo testing. However, the man was outside of Illinois for most of 1986; she had spoken with him in November 1986, but could not obtain an address for service of process. Further, she did all that she could do to bring in this man, which accounted for the continuances of the paternity hearing.

Elizabeth further alleged that, under Illinois law, she had an absolute right to a paternity trial, regardless of the results of the paternity test. Additionally, the trial court was neither fair nor impartial. Rather, the court prejudged the case, intimidated and berated Elizabeth, and generally acted on Frank's behalf. Elizabeth also alleged that section 2—611, as amended, which required Hess' signature, became effective long after Elizabeth had filed her response to Frank's custody petition.

On April 1, 1987, the trial court held a hearing on Frank's petition for sanctions. The trial court first repeated its finding, which it made at the paternity trial, that Elizabeth's uncorroborated testimony was unworthy of belief. The court next found that Hess failed to make a reasonable investigation to determine whether Elizabeth's pleading was well grounded in fact. Pursuant to section 2—611, the trial court awarded Frank $1,100 in attorney fees and $56 in costs. The court assessed the award against both Elizabeth and Hess. Elizabeth appeals.

OPINION

■ Prior to its recent amendment, section 2—611 of the Code of Civil Procedure subjected a party to sanctions for pleading allegations and denials made without reasonable cause and found to be untrue. (Ill. Rev. Stat. 1985, ch. 110, par. 2—611.) However, section 2—611, as

amended effective November 25, 1986, requires an attorney to sign pleadings and other papers filed with the court. By his signature, the attorney certifies that he has made a reasonable inquiry into its basis and believes that it is well grounded in fact, warranted by existing law, and is being made in good faith. Ill. Rev. Stat. 1987, ch. 110, par. 2—611.

Section 2—611, as it now reads, is intended to prevent counsel from making assertions of fact or law without support. We have interpreted the section as imposing an obligation on an attorney not to file frivolous pleadings. Pleadings and other papers filed in violation of section 2—611 subject the party, the party's attorney, or both, to an appropriate sanction. That sanction may include an order to pay the other party's attorney fees and costs. *People v. King* (1988), 170 Ill. App. 3d 409, 413-14, 524 N.E.2d 723, 726.

## I

We first address Elizabeth's contention that the amended section 2—611 does not apply to this case. Elizabeth notes that the amended provision became effective on November 25, 1986. Thus, it was not in effect at the time she filed her response to Frank's custody petition. She argues that Hess was not required to sign, nor did he sign, her pleading.

Frank notes, however, that the amended provision was effective on the date of the paternity trial, January 22, 1987. He claims that immediately prior to trial, the court requested each attorney to sign his or her pleading, and that each attorney did so. Hess denies that he signed Elizabeth's pleading.

The appellate record does not contain a record of the paternity trial. At oral argument in this court, Hess was questioned as to why he failed to incorporate the paternity trial record into the record on appeal, since the issue of his signature was important to the case. He responded that the paternity trial was not at issue, but rather the hearing on sanctions.

■ This statement is error. An appellant carries the burden of presenting a sufficiently complete record of the proceedings at trial to support a claim of error. In the absence of such a record on appeal, it will be presumed that the order entered by the trial court conformed to the law and had a sufficient factual basis. Any doubts that may arise from the incompleteness of the record will be resolved against the appellant. *Foutch v. O'Bryant* (1984), 99 Ill. 2d 389, 391-92, 459 N.E.2d 958, 959 (and cases cited therein).

■ Applying these principles to the case at bar, it is clear that we

must reject this contention. Elizabeth is the appellant. Therefore, she carried the burden of supplying this court with a complete record that we can review. Without the record of the paternity trial, we, of course, cannot even determine what occurred at the trial, much less determine whether the trial court abused its discretion. In the absence of the record, we must assume that Hess signed Elizabeth's pleading, and that the trial court conformed with the law. Consequently, we hold that the amended section 2—611 applies to the case at bar.

## II

Elizabeth next claims that the trial court abused its discretion in imposing section 2—611 sanctions against her and Hess. Elizabeth contends that she had an absolute right to a judicial determination of paternity, regardless of the paternity test results and the other evidence. Additionally, Hess contends that Elizabeth's denial of Frank's paternity obliged him to seek a judicial determination.

■■ Hess misperceives his professional obligations. "Section 2—611 imposes upon both client and counsel the duty to make a reasonable inquiry into the facts to support a legal claim or defense before pleadings and other legal papers are filed with the court." (*Chicago Title & Trust Co. v. Anderson* (1988), 177 Ill. App. 3d 615, 622, 532 N.E.2d 595, 600.) In *Chicago Title & Trust*, this court thoroughly reviewed the nature and extent of an attorney's duty of reasonable inquiry; we need not repeat our analysis here. It suffices to say that "if all the attorney has is his client's assurance that facts exist, he has not satisfied his obligation." (177 Ill. App. 3d at 624, 532 N.E.2d at 601, quoting Schwarzer, *Sanctions Under the New Federal Rule 11—A Closer Look*, 104 F.R.D. 181, 186-87 (1985).) We note lastly that we will not disturb a trial court's imposition of sanctions absent an abuse of discretion. 177 Ill. App. 3d at 625, 532 N.E.2d at 601.

■ Hess, of course, has a professional obligation to Elizabeth. However, we agree with the court in *Van Berkel v. Fox Farm & Road Machinery* (D. Minn. 1984), 581 F. Supp. 1248, which held that an attorney has a professional duty to promptly dismiss a baseless lawsuit, even over the objection of the client, when the attorney learns that the client has no case. The court reasoned:

> "Attorneys are officers of the court and their first duty is to the administration of justice. Whenever an attorney's duties to his client conflict with those he owes to the public as an officer of the court, he must give precedence to his duty to the public. Any other view would run counter to a principled system of justice." (581 F. Supp. at 1251.)

Further, we "emphatically reject any suggestion that a lawyer may shield his transgressions behind the simplistic plea that he only did what his client desired." (*Blair v. Shenandoah Women's Center, Inc.* (4th Cir. 1985), 757 F.2d 1435, 1438.) Additionally, we hold that an attorney may not shield his transgressions behind the equally simplistic plea that he was only exercising his right to a trial.

■ After reviewing the record, we cannot say that the trial court abused its discretion in imposing sanctions against Elizabeth and Hess. As stated earlier, Frank's petition for section 2—611 sanctions lists the facts which Hess could have discovered after making a reasonable inquiry. Frank was in the hospital delivery room with Elizabeth, with her consent, when Yvonne was born. Frank is named as Yvonne's father on her birth certificate, the truth of which Elizabeth certified. Blood tests were sent to Hess showing a 99.99% probability that Frank was Yvonne's father. Frank and Elizabeth lived together during the time of Yvonne's conception. Also, only Elizabeth could have obtained a court order, *via* a paternity action, requiring blood testing of a man outside of the present lawsuit; she never brought such an action by the time of the paternity trial. Approximately 10 months elapsed between the time Hess received the paternity test report and the paternity trial.

At trial, Elizabeth's only evidence of Frank's nonpaternity was her uncorroborated testimony, which the trial court found unworthy of belief.

> "An attorney is obligated to dissuade his client from pursuing specious claims, and thereby avoid possible sanctions by the court, as well as unnecessary costs of litigating a worthless claim. Although reasonable attorneys may differ about whether a particular claim is deserving of litigation, the obligation [1] to counsel the client against bringing meritless claims, and [2] to conduct reasonable inquiry before instituting suit, are clear and unambiguous in all cases." *Mohammed v. Union Carbide Corp.* (E.D. Mich. 1985), 606 F. Supp. 252, 261.

We uphold the trial court's imposition of section 2—611 sanctions against Elizabeth and Hess.

For the foregoing reasons, the order of the circuit court of Cook County is affirmed in all respects.

Affirmed.

JIGANTI, P.J., and McMORROW, J., concur.