*In re* ESTELLE S. ZARZYCKI, a Disabled Person.

First District (5th Division)   No. 1—88—2775

Opinion filed April 6, 1990.—Rehearing denied August 23, 1990.

Steven J. Rosenberg, P.C., of Chicago, for appellant.

Vedder, Price, Kaufman & Kammholz, of Chicago (Richard F. Zehnle, of counsel), for appellee Richard C. Zarzycki.

Wildman, Harrold, Allen & Dixon, of Chicago (Joseph P. Switzer, of counsel), for appellee Shirley M. Hunter.

JUSTICE LORENZ delivered the opinion of the court:

This is an appeal from the award of attorney fees and costs, pursuant to section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—611).

We affirm.

Alice Quall (Alice), Richard Zarzycki (Richard), and Shirley Hunter (Shirley) are the children of Estelle S. Zarzycki (Zarzycki).

On September 9, 1983, at Alice's urgings, Zarzycki executed a trust and pour-over will. Chicago Title & Trust Company (Chicago Title) was named trustee in the trust and executor of the will.

Thirteen days later, on September 22, 1983, Zarzycki revoked the September 9, 1983, trust agreement and will and executed, instead, a self-declaration of trust and new pour-over will. She also executed, on September 24, 1983, a document giving Richard durable power of attorney. Richard and Shirley (together, respondents) were named successor co-trustees of the new trust and executors of the new will.

On January 27, 1986, Alice filed an action in the probate division of the circuit court to appoint a guardian for Zarzycki because Zarzycki suffered from Alzheimer's disease. Following a hearing, on October 6, 1986, the circuit court appointed Richard plenary guardian of Zarzycki's estate and Alice guardian of her person.

On September 9, 1987, Alice filed a petition to set aside the September 22, 1983, trust and power of attorney, alleging Zarzycki was incompetent by reason of Alzheimer's disease and was induced by respondents to execute the documents.

Trial on the petition commenced in March 1988. At the conclusion of Alice's case in chief, respondents moved for, and were granted, a directed verdict.

Subsequently, respondents moved for sanctions against Alice pursuant to section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—611) and were awarded $16,988.60 for attorney fees and costs. The record indicates the trial judge based the award of sanctions on the determination that no evidence was presented that Zarzycki was mentally incapable of executing the September 22, 1983, trust and the power of attorney, or that she was induced to do so.

This appeal followed.

OPINION

■■ Under the operative language of section 2—611, an attorney's signature on a pleading "constitutes a certificate by him that he has read the pleading *** [and] to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose[.]" Ill. Rev. Stat. 1987, ch. 110, par. 2—611.

We note the contentions raised by Alice on appeal relate to the "well grounded in fact and is warranted by existing law" clause of section 2—611. Essentially, Alice argues the trial judge awarded sanctions as punishment for Alice's failure to present sufficient evidence to persuade the court. Alice concedes she presented no direct evidence at trial of Zarzycki's mental condition at the time the second trust and power of attorney were executed. However, Alice argues evidence in the record of other events, near in time to execution of the documents, indicated Zarzycki lacked the requisite mental capacity. Specifically, Alice notes testimony, at trial, of Dr. Edward John Herba and the testimony of Dr. Steven Alan Berman, during the 1986 guardianship proceeding. Alice also points to a letter dated May 13, 1988, from Dr. Bruce Naughton, which was not part of the evidence presented at trial. Alice also argues Zarzycki executed the power of attorney two days after the trust was executed, apparently suggesting that act evinces respondents' own concern for Zarzycki's mental condition. Finally, Alice argues the trial judge, himself, precluded evidence of the ultimate fact issue by precluding Alice from testifying as to her opinion of Zarzycki's mental condition.

██ █ In *Chicago Title & Trust Co. v. Anderson* (1988), 177 Ill. App. 3d 615, 532 N.E.2d 595, the appellate court, in a detailed discussion, set out considerations underlying imposition of sanctions relative to whether pleadings are "well grounded in fact," citing comments concerning Rule 11 of the Federal Rules of Civil Procedure, the counterpart of section 2—611. In explaining what is required by the obligation of reasonable inquiry into the facts to support a legal claim or defense, the court noted the following observation:

" 'If the rule is to have meaning, those facts must consist of admissible evidence or at least be calculated to lead to such evidence. They need not be undisputed or indisputable but they must be sufficiently substantial to support a reasonable belief in the existence of a factual basis for the paper.' " (*Anderson*, 177 Ill. App. 3d at 624, 532 N.E.2d at 601, quoting Schwarzer, *Sanctions Under the New Federal Rule 11—A Closer Look*, 104 F.R.D. 181, 186-87 (1985).)

We note that once a trial judge has made a determination that sanctions are proper, courts of review are constrained to affirm that determination absent a showing that the trial judge abused his discretion. *Anderson*, 177 Ill. App. 3d 615, 532 N.E.2d 595.

██ After examining the record and reviewing Alice's contentions on appeal, we cannot conclude imposition of sanctions constituted an abuse of discretion.

At trial, Alice stated she arranged for Zarzycki to execute the initial trust with Chicago Title as trustee because Zarzycki "did not want any of her children to be trustees." However, two days after establishing the trust, Zarzycki indicated she was upset by the arrangement because she did not have control of her money. The second trust was established thereafter.

Alice admitted that in August 1983, Shirley had planned to travel to Chicago from Arizona to accompany Alice in arranging an estate plan. Alice admitted, however, she tried to have Zarzycki execute a plan before Shirley arrived. Alice also admitted that her discussions with Zarzycki in 1983 regarding an estate plan were done deliberately without Richard's knowledge. Alice further acknowledged that on September 9, 1983, without telling Richard and against Shirley's wishes, she had Zarzycki execute the plan. Alice admitted she did not tell Zarzycki Richard had not been informed and never informed Raymond Groble, the attorney who assisted in the execution of both trusts, that Richard was not told of her efforts to set up the plan or of Shirley's objection. After the plan had been executed, Shirley had asked Alice to return to Groble's office to execute another estate plan, but Alice had refused. Alice also declined Groble's request to be present at his office when the second plan was discussed. Last, Alice admitted she did not want Richard to be the trustee of Zarzycki's trust.

Regarding indication of Zarzycki's mental condition, Alice stated that Zarzycki had renewed her driver's license in 1983 and 1985, and that, in 1984, Alice and her husband had given Zarzycki a car. Further, in 1983, Zarzycki sold a building she owned and, in 1984, Zarzycki had asked Alice to repay a personal loan given in 1980.

Dr. Edward John Herba, a neurologist, testified that on July 7, 1983, he examined Zarzycki at Presbyterian-St. Luke's Hospital, where Zarzycki was hospitalized after falling from a ladder. Based on his examination and Zarzycki's patient history, which indicated Zarzycki had experienced an "episode" of confusion approximately one month prior to her admission into the hospital, he believed Zarzycki might have had a "paroxysmal central nervous system disorder." Herba explained that disorder as "an episodic sudden onset period where there is compromise of the central nervous system." Herba testified he also believed Zarzycki might have "had a seizure disorder to account for the paroxysmal condition" or "a circulatory deficit, which is sometimes accompanie[d] by paroxysmal disorders."

On cross-examination, Herba testified that Zarzycki's patient history disclosed that, two years prior to admission, Zarzycki received

medication for a "left carotid bruise." From then until she suffered the episode of confusion, Zarzycki's neurological condition was normal. The history also reported that, upon admission at the hospital, Zarzycki was alert, knew what time it was, knew where she was, knew who she was, and her behavior was otherwise appropriate. Herba testified he found Zarzycki to be alert and of appropriate orientation. Herba also testified Zarzycki signed a consent form to allow a "carotid angiogram procedure" after Zarzycki had been informed of attendant complications. Herba admitted he had no opinion as to what Zarzycki's condition might have been in September 1983.

Dr. Steven Alan Berman, another neurologist, testified during the 1986 guardianship proceeding that he examined Zarzycki on June 4, 1986. Based on that examination, as well as Zarzycki's prior patient history, he reached a conclusion that Zarzycki probably suffered from Alzheimer's disease. However, Berman testified that, in his opinion, Zarzycki, at that time, was "partially capable" of making personal and financial decisions and was able to form "broad preferences as to how she wish[ed] to conduct her life." Berman admitted he could not say that "three years before[,] [Zarzycki] would be incapable of doing anything for herself."

The above evidence does not support Alice's argument that the petition was well grounded in fact. As conceded, no direct evidence was presented to establish Zarzycki's mental state on September 9, 1983. Further, no basis exists in the record to infer from circumstantial evidence presented that the petition's allegations, in that respect, were well grounded in fact. Neither Herba nor Berman stated any conclusion about Zarzycki's mental condition as of September 1983. Alice's own testimony similarly failed in that respect. More significantly, Alice's testimony is indicative of Alice's personal displeasure in Richard's involvement in Zarzycki's financial affairs, rather than of concern regarding validity of the second trust and power of attorney. In fact, Alice admitted that, only 13 days prior to execution of the trust, *she*, herself, had arranged for Zarzycki to execute a trust and pour-over will without Richard's knowledge and against Shirley's wishes.

Nor are we persuaded by the other contentions raised by Alice regarding the May 13, 1988, letter of Dr. Bruce Naughton, the trial judge's preclusion of Alice's opinion testimony, or the fact that the power of attorney was executed two days following creation of the self-directed trust.

As to the letter, Alice concedes it was not evidence presented at trial. However, even considering its contents as such, the letter

merely cites the "continuing decline" of Zarzycki's mental state "for at least five years," and, at best, is no more helpful to Alice than the testimony of Herba and Berman, above.

We find Alice's argument regarding preclusion of opportunity to testify concerning her opinion of Zarzycki's mental condition irrelevant regardless of whether preclusion of that testimony was legally proper. The allegations of the petition itself indicate what Alice's opinion was. Here, precluding opportunity to state the obvious can provide little foundation to assert the petition's allegations were well grounded in fact when, with opportunity at trial to establish such facts directly or circumstantially, Alice failed to do so.

We consider Alice's argument pertaining to the motive behind execution of the power of attorney two days after creation of the second trust mere speculation.

Finally, we note no evidence in the record exists respecting exercise of undue influence on the part of respondents.

Therefore, while we understand section 2—611 is not intended to provide means to penalize unsuccessful litigants (*Prevender v. Thonn* (1988), 166 Ill. App. 3d 30, 518 N.E.2d 1374), where, as here, the record contains no basis to conclude the trial judge abused his discretion in awarding sanctions, we must affirm.

Affirmed.

MURRAY and GORDON, JJ., concur.